OPINION OF THE COURT
Joseph Bruno, J.
overview:
This is a case of apparent first impression which raises the issue of whether the silence of a defendant, throughout a full bench trial and verdict, on the issue of his ineligibility for youthful offender treatment, constitutes an implied waiver of his right to a trial by jury.
In the instant case, the defendant, an 18-year-old youth, was charged with two misdemeanor counts and one violation in an information filed by the Kings County District Attorney’s office. The record of the defendant’s prior convictions before the court indicated that defendant had no prior mandatory youthful offender adjudications. Thus, after a series of pretrial proceedings and adjournments, the instant case was tried before this court, nonjury, pursuant to CPL 720.20 (1) (b); (2), (3) and CPL 340.40 (7).
After trial, this court found defendant guilty of the misdemeanor counts. Subsequently, on the date set for sentencing and with a full investigation and report from the Department of Probation, it became apparent that the defendant had a prior adjudication as a mandatory youthful offender. It is without question that had the court been informed of the fact of defendant’s prior adjudication, this case would have been tried before a jury unless the defendant executed a proper waiver of trial by jury pursuant to CPL 320.10 (2).
Defendant now moves this court pursuant to CPL 330.30 to set aside the verdict on the grounds that he was denied his constitutional right to a trial by jury which he contends he never waived. The defendant, in support of his argument, maintains that his failure to advise the court of his prior youthful offender adjudication should not militate against the granting of a new trial because he contends that his failure to inform the court, whether deliberate or inadvertent, was protected by the Fifth Amendment privilege against self-incrimination.
The People maintain that the defendant’s failure to timely object at trial to the alleged error, i.e., the nonjury status of *150 the case, bars him from raising the issue at this time. The People also contend that the defendant had a duty to inform the court of his prior adjudication as a youthful offender in Supreme Court and that this information was not protected by the Fifth Amendment privilege against self-incrimination.
PROCEDURAL HISTORY:
On May 16, 1991, defendant, allegedly acting in concert with two others, was arrested and charged in Supreme Court, Kings County for the crimes of possession of an imitation pistol, Administrative Code of the City of New York § 10-131 (g), a class A misdemeanor; robbery in the second degree, Penal Law § 160.10 (2) (b), a class C felony, and robbery in the first degree, a class B felony. Defendant pleaded to robbery in the second degree on September 23, 1991.
Defendant was adjudicated a youthful offender in that case in Supreme Court, Kings County on November 14, 1991 and he was placed on five years’ probation.
The next day, November 15, 1991, the defendant was arrested in the instant case for the crimes of menacing, Penal Law § 120.15, a class B misdemeanor; criminal possession of a weapon in the fourth degree, Penal Law § 265.01 (2), a class A misdemeanor, and harassment, Penal Law § 240.25 (1), a violation. He was issued a desk appearance ticket returnable on December 17, 1991 in Kings County Criminal Court. On December 3, 1991, in the regular course of scheduling and preparing a case for arraignment, the defendant’s prior arrest record was generated and added to the official court file. It omitted any reference to defendant’s May 16, 1991 arrest and his adjudication as a youthful offender on November 14, 1991. Defendant was arraigned on the charges in this case on January 30, 1992.
On March 20, 1992, the court determined that defendant would be a mandatory youthful offender pursuant to CPL 720.20 (1) (b); (2) and (3) if he were found guilty of any of the misdemeanor charges. Since the maximum jail sentence permissible for a youthful offender is six months pursuant to Penal Law § 60.02, the right to a jury trial pursuant to CPL 340.40 (7) does not adhere. (See, Matter of Gold v Gartenstein, 100 Misc 2d 253 [Sup Ct, Kings County 1979]; People v Denning, 98 Misc 2d 369 [App Term, 1st Dept 1979].)
The case was adjourned for a bench trial in BTP-2. On June 2, 1992, the bench trial began culminating in a verdict of guilty on the charges of menacing, Penal Law § 120.15, and *151 criminal possession of a weapon in the fourth degree, Penal Law § 265.01 (2). The defendant was acquitted of the harassment charge.
On August 10, 1992, the date that the defendant was to be sentenced, this court was informed for the first time from information contained in the investigation and sentence report prepared by the Department of Probation that the defendant had a prior arrest on May 16, 1991 and that he had been adjudicated a youthful offender in that case in Supreme Court, Kings County on November 14, 1991.
CONCLUSIONS OF LAW:
The first issue facing this court was whether the defendant has a Fifth Amendment privilege against self-incrimination which protected him and blunted any obligation that he might otherwise have had to provide the court with information regarding his prior youthful offender adjudication. If this court finds that defendant had a right to withhold information related to his prior youthful offender adjudication status from the court because it implicated his Fifth Amendment privilege against self-incrimination, then it would not be necessary to determine whether defendant waived his right to a trial by jury.
This court finds that defendant has no privilege against self-incrimination (see, infra, at 156-158, for a complete discussion of this issue) and hence, it is necessary for this court to determine whether the defendant is entitled to a new trial based upon his argument that no proper waiver of the right to trial by jury was ever offered or implied by the defendant or granted by the court.
Defendant’s motion is granted and a trial by jury is ordered on the basis that defendant never knowingly, voluntarily or intelligently waived his right to a trial by jury.
THE RIGHT TO A TRIAL BY JURY:
The right to trial by jury of one’s peers is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution. As the Supreme Court stated in Duncan v Louisiana (391 US 145, 158 [1968]): "Our conclusion is that in the American States, as in the federal judicial system, a general grant of jury trial for serious offenses is a fundamental right, essential for preventing miscarriages of justice and for assuring that fair trials are provided for all defendants.”
*152 The Supreme Court in Duncan (supra) incorporated the Sixth Amendment’s guarantee of a trial by jury through the Fourteenth Amendment and made it binding on the States. The Court distinguished between "serious” and "petty” offenses, holding that "petty offenses” may be tried without a jury. In Baldwin v New York (399 US 66, 69 [1970]) the Court defined "petty” by considering the severity of the maximum penalty and concluded that "no offense can be deemed 'petty’ for purposes of the right to trial by jury where imprisonment for more than six months is authorized.”
Article I, § 2 of the New York Constitution provides inter alla that "trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever”. The New York State Legislature, in conformity with constitutional limitations on the right to trial by jury (see, Baldwin v New York, 399 US 66, supra), enacted CPL 340.40 (2) which states that, "in the New York city criminal court the trial of an information which charges a misdemeanor for which the authorized term of imprisonment is not more than six months must be a single judge trial.”
Matter of Morgenthau v Erlbaum (59 NY2d 143 [1983]) held that there is no right to a jury trial for a "petty offense” within the meaning of the Sixth Amendment. (See also, People v Williams, 120 Misc 2d 68 [Crim Ct, Bronx County 1983].) The Court in Morgenthau cited Codispoti v Pennsylvania (418 US 506, 512) for the proposition that: "our decisions have established a fixed dividing line between petty and serious offenses: those crimes carrying a sentence of more than six months are serious crimes and those carrying a sentence of six months or less are petty crimes.”
The Legislature also provides that a mandatory youthful offender, a person at least 16 years old but less than 19 years old, who had not previously been convicted of a crime or adjudicated a youthful offender (pursuant to CPL 720.20) must be tried by a single Trial Judge without a jury. (CPL 340.40 [7].)
The provision mandating that a youthful offender must be tried by a single Trial Judge does not violate the constitutional right to a trial by jury and it is not violative of equal protection requirements since only those persons charged with "serious” offenses having an authorized maximum penalty in excess of six months’ incarceration are entitled to a jury trial. (People v Denning, 98 Misc 2d 369, supra; see also, Matter of *153 Gold v Gartenstein, 100 Misc 2d 253, supra; People v Gray, 97 Misc 2d 285 [Crim Ct, NY County 1978].) The maximum sentence defendant could have received as a youthful offender is six months. (Penal Law § 60.02.)
This court tried and convicted defendant of a class A misdemeanor which carries a maximum sentence of one year. The defendant was tried without a jury as a mandatory youthful offender pursuant to CPL 720.20 and CPL 340.40 (7) because this court was not aware of defendant’s prior adjudication as a youthful offender, a determination which was made by the Supreme Court one day prior to defendant’s arrest on the present charges. This court’s lack of information at the time of defendant’s trial deprived him of his constitutional right to a jury trial. (NY Const, art I, § 2.)
It is an uncontroverted fact that if this court had known of the defendant’s prior adjudication as a youthful offender, the defendant would have received a jury trial. Moreover, throughout defendant’s trial in this court, he was the only courtroom participant who definitely knew of the prior adjudication. Defense counsel claims that he was not aware of defendant’s prior youthful offender adjudication in Supreme Court, Kings County. The defendant remained silent and his prior adjudication was not known by this court until a sentencing report was received from the New York City Department of Probation on the day the defendant was to be sentenced.
WAIVER OF THE RIGHT TO TRIAL BY JURY:
The fundamental nature of the right to a trial by jury in cases where a defendant faces incarceration of more than six months gives rise to the intensity with which the New York State Legislature and the courts have scrutinized any waiver of this right by a defendant in a criminal case.
New York Constitution, article I, § 2 provides in pertinent part: "A jury trial may be waived by the defendant in all criminal cases, except those in which the crime charged may be punishable by death, by a written instrument signed by the defendant in person in open court before and with the approval of a judge or justice of a court having jurisdiction to try the offense.” (See also, CPL 320.10.) An oral waiver, even in open court, is invalid and any conviction therefrom will be reversed. (People v Basora, 111 AD2d 248 [2d Dept 1985]; People v Ahmed, 66 NY2d 307 [1985].)
Prior to the adoption of that portion of article I, § 2 of the *154 New York Constitution which described the formalities for executing a jury waiver in criminal cases, it was not possible for a defendant in a criminal case to waive his right to a trial by jury. (People ex rel. Rohrlich v Follette, 20 NY2d 297, 300 [1967], citing Cancemi v People, 18 NY 128 [1858]; People v Cosmo, 205 NY 91 [1912].) The Court of Appeals in People ex rel. Rohrlich v Follette (supra) went on to say that the basis of these decisions was that the right to a trial by jury (like the right to be present at trial and the right against self-incrimination) "was so fundamental and so essential to the protection of the defendant’s rights that it could not be waived. Indeed, the present constitutional amendment carries forth that philosophy to the extent that it makes no provision for waiver of a right to trial by jury in capital cases”. (People ex rel. Rohrlich v Follette, supra, at 300; see, NY Const, art I, § 2.)
Fundamental rights may be waived but only pursuant to a knowing, voluntary or intelligent waiver. (People v Cannady, 127 Misc 2d 783 [Sup Ct, Kings County 1985].)
Courts have been "scrupulous in enforcing compliance with the waiver provisions in those cases in which waiver is permissible.” (People ex rel. Rohrlich v Follette, 20 NY2d 297, 300, supra; see also, People v Ryan, 19 NY2d 100 [1966]; People v Davidson, 136 AD2d 66 [2d Dept 1988]; People v Basora, 111 AD2d 248 [2d Dept 1985], supra.)
The question we are confronted with in this case is whether the defendant may waive a fundamental right, the right to a trial by jury, by his calculated or inadvertent silence. In other words, did defendant’s silence constitute a knowing, intelligent and voluntary implied waiver of his right to a trial by jury.
The People maintain that a trial court’s authority to set aside a verdict is limited pursuant to CPL 330.30 (1) which the People contend permits a trial court to set aside a verdict only on a ground which, if raised on appeal, would require a reversal as a matter of law. The People cite People v Sadowski (173 AD2d 873 [2d Dept 1991]) for the proposition that only a claim of error which is properly preserved for appellate review provides a basis to set aside a verdict and that, in the absence of timely objection at trial to the alleged error, the trial court cannot set aside a verdict.
People v Sadowski (173 AD2d 873, supra) is simply not on point. In that case, the alleged error, an improper "no adverse inference” charge to which the defendant failed to object during trial, was deemed waived and not preserved for appel *155 late review. The Sadowski Court distinguished People v McLucas (15 NY2d 167 [1965]) which held that error implicating a fundamental right of a defendant (the right against self-incrimination in that case) requires no objection by the defendant during trial or otherwise to preserve it for appellate review. (See also, People v Ahmed, 66 NY2d 307, 310, supra [the failure of a Judge to retain control of deliberations because of its impact on the constitutional guarantee of trial by jury presents a reviewable question of law even absent timely objection].)
In accord is People v Cannady (127 Misc 2d 783, 785, supra) where the court held that a fundamental right of the defendant was violated when at a trial, conducted in the absence of an absconded defendant, an alternate juror replaced a discharged juror after the jury had begun its deliberations. The court noted that the consent of defendant’s counsel to the substitution did not waive the error and the infringement of defendant’s fundamental right. The court also noted that "[a] defendant cannot be deemed to have waived his right to a jury trial solely by his inferred waiver of the right to be present at the trial” (supra, at 785). The court held that since the right to be present and the right to a jury trial are "fundamental constitutional rights * * * any waiver must be made knowingly, voluntarily, and intelligently” (supra) and in compliance with the procedures set forth in article I, § 2 of the New York Constitution. (See also, People v Ryan, 19 NY2d 100 [1966], supra.)
In People v Davidson (136 AD2d 66, 69-70 [1988], supra) the court noted that the courts have been scrupulous in enforcing compliance with the waiver provisions in those cases in which waiver is permissible. The Court noted that the People bear the burden of establishing that defendant’s jury waiver was accomplished in conformity with constitutional and statutory requisites. It held that the People failed to meet their burden where there was nothing in the record to indicate that the jury waiver form was executed in " 'open court’ ” or that the "waiver of so fundamental a right was 'made knowingly and understandingly, based on an intelligent, informed judgment’ ”. (Supra, at 70.)
The Court of Appeals, faced with a matter in which the Trial Judge was absent from the courtroom during a portion of the jury’s deliberations, during which time they were supervised by the Judge’s law secretary with the defendant’s consent, held that this constituted a denial of the right to a *156 jury trial. The Court noted that waiver connotes the intentional relinquishment or abandonment of a known right, and the fact that defendant did not sign a waiver of the right to trial by jury pursuant to NY Constitution, article I, § 2, deprived the defendant of his right to a trial by jury despite his oral consent to the trial court’s actions. (People v Ahmed, 66 NY2d 307, supra.)
More recently, the Court of Appeals in the landmark case of People v Antommarchi (80 NY2d 247; see also, People v Mitchell, 80 NY2d 519) held that the defendant’s failure to object to being excluded from certain side bar discussions with prospective jurors was not fatal to his CPL 330.30 motion on the grounds that his fundamental rights at trial had been violated. The Court reversed the defendant’s conviction and ordered a new trial and held no implied waiver of defendant’s fundamental rights can be sustained.
This court finds that defendant’s failure to inform it of his prior adjudication as a mandatory youthful offender, whether intentional, conspiratorial or inadvertent, does not constitute a waiver of his right to a jury trial as said waiver must be made in compliance with statutory and constitutional guidelines in "open court” and "voluntarily, knowingly and intelligently” made. Moreover, since the right to a trial by jury is a fundamental right, the fact that defendant did not raise his objection at trial does not bar him under CPL 330.30 (1) from moving to set aside the verdict. Nor does it bar the court from granting said motion.
Accordingly, the verdict in the instant case, wherein the defendant was found guilty of violating sections 120.15 and 265.01 (2) of the Penal Law is set aside and a new trial is ordered to proceed.
defendant’s fifth amendment contentions:
Defendant’s argument, that he had a Fifth Amendment privilege against self-incrimination, and therefore, had no duty to inform the court of his prior status, is misplaced. The Fifth Amendment to the United States Constitution protects only against the compulsion to give "testimonial or communicative” evidence. (Schmerber v California, 384 US 757 [1966].)
In Schmerber (supra), the Supreme Court was faced with deciding if a defendant’s Fifth Amendment constitutional rights were being infringed by a compulsory blood test and the admission of the test results into evidence. The majority held that this evidence was neither "testimonial nor communica *157 tive” since the defendant was not being compelled to testify against himself or otherwise provide the State with evidence of a testimonial or communicative nature. The majority ruled with full knowledge that the test results would be used as evidence to establish the defendant’s guilt of the charges pending against him in that case. The dissent argued that since the blood test was compulsory and the results of the blood test would be entered as evidence against the defendant to prove his guilt, this made the evidence testimonial or communicative and protected by the Fifth Amendment.
Under any reading of the majority opinion in Schmerber (supra), defendant in this case receives no support for his Fifth Amendment argument. Even applying the dissent’s reasoning in Schmerber to this case offers little support for defendant’s argument. The dissent rests on the argument that the test results would be used as direct evidence to determine the defendant’s guilt or innocence and thus, the Fifth Amendment shields the defendant from being compelled to take a blood test.
In the instant matter, defendant Elliot’s disclosure of his prior youthful offender adjudication could not be used to prove defendant’s guilt or innocence of the charges against him. At most, the underlying facts of the charges leading to the youthful offender adjudication and not the adjudication itself, could be used, if so ruled after Sandoval review by the court, to attack the defendant’s credibility, if he testifies at trial. This use is not, as in Schmerber (supra), evidence going to establish defendant’s guilt or innocence of the charges facing him, but rather is tangential to that issue. Defendant Elliot, by disclosing his prior adjudication, would not have been required to give testimony against himself nor would the disclosure be evidence of his guilt.
New York law provides less support for defendant’s Fifth Amendment argument. In People v Rumph (128 Misc 2d 438, 446 [Sup Ct, Kings County 1985]) the court held that a defendant’s Fifth Amendment right not to testify does not encompass "a concomitant constitutional right to destroy, suppress or refuse to divulge relevant nontestimonial evidence.” Here, the information the defendant failed to bring to the court’s attention was neither testimonial nor was it relevant to a determination of defendant’s guilt. The information would have been utilized for the purpose of determining defendant’s status. The information would also have been *158 relevant to the issue of defendant’s credibility if he testified at trial.
Subject to the court’s Sandoval ruling, the prosecution may be permitted to inquire as to the facts underlying a youthful offender adjudication for the purpose of impeaching a defendant’s credibility, provided that no mention was made as to the ultimate disposition. (People v Colon, 161 AD2d 782 [2d Dept 1990]; People v Cook, 37 NY2d 591 [1975]; People v Warner, 52 AD2d 684 [3d Dept 1976].)
Absent a showing of prejudice, it is not error for the Trial Judge who conducted a Sandoval hearing to preside at trial whether or not the trial is to be conducted with or without a jury. (See, People v Latella, 112 AD2d 324 [2d Dept 1985]; People v Lombardi, 76 AD2d 891 [2d Dept 1980].) Accordingly, defendant’s claim that he had a privilege to withhold information from the court that had no relevance to the court’s disposition of his case is without merit. No reading of the applicable case law supports defendant’s Fifth Amendment claims and thus, they are rejected by this court.
Finally, this court feels compelled to comment on the potential for abuse of the court process which lies at the base of this case. The attorneys for both sides, as officers of the court, had an obligation in their review and preparation of this case to have avoided what occurred herein. Both attorneys failed to use due diligence to fulfill their respective obligations to this court. As a result, this court made an erroneous decision with respect to defendant’s status because the court lacked necessary information to make a correct determination. The fact that this court did not receive this information in a timely manner affected the defendant’s constitutional right to a trial by jury. Moreover, time and the scant judicial resources of this court were wasted in order to preserve defendant’s rights.
The District Attorney’s office was deficient in its failure to report defendant’s prior adjudication as a youthful offender to this court. Defense counsel, as an officer of the court, has informed this court that he was not aware of defendant’s prior status when this court made its determination to try the defendant as a mandatory youthful offender. While defendant must have known his prior status, he failed to report it to the court. Defendant, however, is not an attorney, and this court cannot conclude that he recognized the consequences of his actions and knowingly manipulated the system in order to get two bites at the apple.
*159 This court finds that the failure of both attorneys to impart the necessary information in a timely manner was likely due to a lack of diligence on their parts, and not bad faith, unethical conduct, or any attempt to secure a tactical advantage. Accordingly, this court will not prolong this issue by further investigation. Instead, I will direct my efforts to bring about a new trial as quickly and as expeditiously as possible.